UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STACY T. TODD                                                                Petitioner

v.                                                   Criminal Action No. 3:14-cr-00003-RGJ
                                                     Civil Action No. 3:17-cv-00725-RGJ

UNITED STATES OF AMERICA                                          Respondent

* * * * *

## MEMORANDUM OPINION AND ORDER

Petitioner Stacy T. Todd  ("Todd") brings a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("Motion to Vacate") seeking relief for his 2016 conviction in the Western District of Kentucky.  [DE 1; DE 298].  United States Magistrate Judge Dave Whalin issued a Findings of Fact, Conclusions of Law and Recommendation ("R&R").  [DE 319]. Todd filed objections.  [DE 321, 322, 333].  Todd has also filed two "Motion for Relation Back Amendment Pursuant to Fed. R. Civ. P. 15(c)" ("Motions to Amend").  [DE 330, DE 334].  For the reasons below, the Court **OVERRULES** Todd's objections, **ADOPTS** the R&R, and **DENIES** Todd's Motions to Amend.

## BACKGROUND

### A.    Factual Background

The facts in the R&R are as follows.  [DE 319 at 1289–91].

Around June 2013, multiple law enforcement organizations began investigating the heroin and methamphetamine trafficking activities of the Brian Reed Drug Trafficking Organization in Louisville, Kentucky.  A confidential source identified that Brian Reed ("Reed") was a multi-kilogram heroin trafficker that had sources of supply in Chicago, Illinois, and Detroit, Michigan, and traveled to these cities twice per month to acquire large amounts of heroin, which he then

1

transported back to Louisville for distribution.  The investigation revealed that Reed sometimes sold the heroin himself but gave the majority to his partner, Todd, on consignment.

Between January 2, 2014, and January 6, 2014, law enforcement investigators intercepted telephone communications between Todd and a confidential informant.  Todd and the informant agreed on a date and time to meet at a Cracker Barrel restaurant with Todd's stepbrother, Timothy Taylor ("Taylor"), who was interested in purchasing heroin from the informant.  On January 6, 2014, the three individuals met at the Cracker Barrel restaurant at 3:15 p.m. and remained there until about 3:55 p.m. before leaving for a nearby Meijer parking lot.  At approximately 4:01 pm, the informant exited his vehicle to complete the sale.  As the informant removed one of the purported kilograms of heroin and handed it to Todd, police swarmed the location and took Todd and Taylor into custody.

As a result of these and other events, a grand jury in the Western District of Kentucky charged Todd and nine co-defendants in a two-count indictment on January 7, 2014.  Todd was charged with knowingly and intentionally conspiring to possess with intent to distribute and distributing a mixture containing one kilogram or more of heroin in violation of 21 U.S.C. §§ 846 and 841 (b)(1)(A), and knowingly and intentionally attempting to possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

Almost two and a half years later, Todd entered into a plea agreement in which the United States agreed to recommend a sentence of imprisonment at the lowest end of the applicable Guideline Range and recommend a reduction of three levels for acceptance of responsibility.  [DE 245 at 822–23].  In exchange, Todd admitted that he "engaged in a conspiracy to distribute at least 1 kilogram . . . of heroin with Brian Reed and others" and that "Todd negotiated for and later showed up to purchase a kilogram of heroin from an undercover officer."  [*Id.* at 820–21].  The

plea agreement specified that Todd was waiving his right to directly appeal his conviction and the resulting sentence and to collaterally attack his conviction and the resulting sentence under 28 U.S.C. § 2255 "[u]nless based on claims of ineffective assistance of counsel or prosecutorial misconduct[.]" [*Id.* at 823–24]. On November 28, 2016, the Court sentenced Todd to 108 months of imprisonment as to each of Counts I and II of the indictment, to be served concurrently, for a total term of 108 months imprisonment with a five-year term of supervised release to follow.

**B.      Procedural Background**

On December 1, 2017, Todd filed the instant *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255.  [DE 298].  Todd argued that his trial counsel was ineffective and that the prosecutor engaged in misconduct.  With the Court's permission, [DE 309], the United States responded to the Motion [DE 308].  Todd replied.  [DE 310].

The Court referred the matter to Magistrate Judge Dave Whalin, who issued the R&R, recommending that the Court deny Todds's Motion to Vacate and deny a certificate of appealability.  [DE 319].  Todd filed timely objections.  [DE 321; DE 322; DE 333].  Todd also filed two "Motions for Relation Back Amendment Pursuant to Fed. R. Civ. P. 15(c)," in which Todd seeks to amend his Motion to Vacate.  [DE 330; DE 334].

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72, a district court may refer a prisoner petition to a magistrate judge to conduct an evidentiary hearing, if necessary, and submit proposed findings of fact and recommendations for the disposition of the petition.  Rule 72(b)(2) provides a petitioner with fourteen days after service to register any objections to the recommended disposition.  This Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made."  28

U.S.C. § 636(b)(1)(C).  A specific objection "explain[s] and cite[s] specific portions of the report which [movant] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (first, second, and fourth alteration in original) (citation omitted).  The Court does not permit a general objection that fails to identify specific factual or legal issues from the R&R as it duplicates the magistrate judge's efforts and wastes judicial resources. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  After reviewing the evidence, the Court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations.  28 U.S.C. § 636(b)(1)(C).

Under 28 U.S.C. § 2255, a prisoner in custody may move to vacate, set aside, or correct a sentence on grounds that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]

28 U.S.C. § 2255(a).  When the prisoner alleges constitutional error, the error must be one of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings to warrant relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005).  Non-constitutional errors, on the other hand, are generally outside the scope of § 2255 relief and only merit relief if the prisoner establishes a "fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 348 (1994); *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000).

## DISCUSSION

The Motion to Vacate presents two grounds for relief, each with multiple subparts.  First, Todd argues that his trial counsel was ineffective; second, he argues that the prosecutor engaged in unconstitutional misconduct.  [*See* DE 298].  The R&R rejected both arguments.  [DE 319].

4

Todd submitted two sets of objections to the R&R, [DE 332; DE 333], but those objections, while lengthy, amount to little more than restatements of his arguments in the Motion to Vacate, and "an objection that does nothing more than state a disagreement with a Magistrate's suggested resolution, or simply summarizes what has been presented before, in not an objection as that term is used in this context." *United States v. Shephard*, CRIMINAL ACTION NO. 09-81-DLB-EBA, 2016 WL 9115464, at *1 (E.D. Ky. Sept. 18, 2016) (citation omitted).  The R&R addressed Todd's arguments thoroughly and is well-reasoned.  The following review of the issues supplements the reasoning in the R&R.

**A.     Ineffective Assistance of Counsel**

In *McMann v. Richardson*, 397 U.S. 759, 771 (1970), the Supreme Court set out the general principle that all "defendants facing felony charges are entitled to the effective assistance of competent counsel."  Then, in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Supreme Court established the two-part, benchmark test for evaluating a claim of ineffective assistance of counsel.  First, the defendant must show that the performance of his or her attorney was deficient. An attorney's performance will be deficient if "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."  *Id.* at 687. *Strickland* directs courts to be highly deferential in their scrutiny of the performance of counsel. *Id.* 689.  In fact, *Strickland* cautions directly that "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690; *O'Hara v. Wigginton*, 24 F.3d 823, 282 (6th Cir. 1994).  Review of an attorney's performance, therefore, should not be made from the perspective of hindsight, but should evaluate the objective reasonableness of the challenged attorney's performance in the circumstances as they existed at the time of the alleged error.

5

*McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996); *Cobb v. Perrine*, 832 F.2d 342, 347 (6th Cir. 1987). The tactical decisions of a defendant's trial counsel are presumed to be part of sound trial strategy and therefore will not be subject to successful attack absent a defendant overcoming this presumption. *Varden v. Wainwright*, 477 U.S. 168, 185–87 (1986).

The second part of *Strickland's* two-part test requires that the defendant establish the attorney's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citation and internal quotation marks omitted). But "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiency . . . Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 1967.

Todd's objections reiterate the manners in which he alleges his trial counsel was ineffective: (1) failure to move to have the indictment dismissed [DE 322 at 1317-19, DE 333 at 1348-49]; (2) failure to give the Government's case adverse testing [DE 322 at 1320, DE 333 at 1350-51]; (3) pressuring Todd into accepting the guilty plea [*Id.*]; (4) failure to object to the imposition of enhancements at sentencing [DE 322 at 1321, DE 333 at 1351-52].

### 1.    *Failure to Move to Have the Indictment Dismissed.*

Todd argues that Counts I and II of the indictment are flawed for failing to list an essential element of those offenses. [DE 298 at 1131–32, 1134, DE 322 at 1316-17, DE 333 at 1348-49].

Todd argues that an unlawful agreement is an essential element of both counts and that neither count mentions that as an element.  [DE 298 at 1134–35, DE 322 at 1316, DE 333 at 1350].

Todd's argument fails on both counts, for the reasons discussed in the R&R.

> ### COUNT I
> From on or about April, 2013, until on or about January 6, 2014, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendants, [Defendant], STACY T. TODD, [Defendants], knowingly and intentionally conspired with each other and others, to possess with the intent to distribute and to distribute one kilogram or more of a mixture and substance containing heroin, a Schedule I controlled substance as defined by Title 21, United States Code, Section 812, in violation of Title 21, United States Code 841(a)(1).  In violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

[DE 1 at 1].  This language substantially tracks the language of the indictment at issue in *United States v. Vassar*, which the Sixth Circuit found was sufficient.[1]  346 F. App'x 17, 19–20 (6th Cir. 2009).  In that case, the Sixth Circuit rejected the defendant's assertion that the indictment "fail[ed] to allege that the conspiracy was unlawful or that his participation was knowing and voluntary." *Id.* at 19.  Count I alleges that Todd "knowingly and intentionally conspired" to possess illegal narcotics with the intent to distribute those narcotics.  Thus it alleges that Todd entered into an unlawful agreement, and Todd's trial counsel was therefore not ineffective for failing to move for its dismissal on that ground.  The Court overrules Todd's objection as to Court I.

Count II alleged that Todd "knowingly and intentionally attempted to possess with the intent to distribute . . . heroin . . . in violation of Title 21, United States Code 841(a)(1)."  As an

---

[1] The indictment in *Vassar* read:

> From on or before January 1, 2004, until on or about August 24, 2005, within the Eastern District of Tennessee, the defendants, [Defendants], and others known and unknown to the grand jury, did conspire, confederate and agree with each other and others both known and unknown to distribute and to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A).

346 F. App'x 17, 19 (6th Cir. 2009).

unlawful agreement is not an essential element of the offense charged in Count II, Todd's counsel was not ineffective for failing to move for its dismissal for failure to allege an unlawful agreement.

Todd next argues that the Government cannot use 21 U.S.C. § 846 to prosecute a conspiracy to attempt to commit a crime. [DE 298 at 1136 (citing *United States v. Meacham*, 626 F.2d 503, 508–09 (5th Cir. 1980); DE 322 at 1318]. As the Sixth Circuit has said, however, 21 U.S.C. § 846 permits concurrently charging a defendant with both conspiracy to possess with the intent to distribute and attempt to possess with the intent to distribute. *See United States v. Richie*, 803 F.2d 722, at \*1 (6th Cir. 1986) (table). This is exactly what the Government did here—Count I charged Todd with conspiracy to possess with the intent to distribute, Count II charged Todd with attempted possession with the intent to distribute, and neither count charged Todd with conspiracy to attempt to possess with the intent to distribute. Todd's trial counsel was therefore not ineffective for moving to dismiss the indictment on this ground and Todd's related objection is overruled.

### 2. *Failure to Give the Government's Case Adverse Testing.*

Todd faults his trial counsel for failing to raise several defenses: (a) that there existed insufficient evidence that Todd had conspired with anyone other than a government agent; (b) that there was insufficient evidence to prove that Todd intended "to purchase or sell actual narcotics beyond a reasonable doubt"; and (c) that Todd's due process rights were violated when the Government paid a confidential informant to ensnare Todd in illegal activity. [DE 298 at 1142–48; DE 322 at 1323-24; DE 333 at 1349-51]. Todd appears to argue that his trial counsel was ineffective for advising Todd to accept the guilty plea despite the alleged deficiencies in the

Government's case against Todd.[2]  This argument fails both because, as the R&R details, any error

on trial counsel's part were not "so serious that counsel was not functioning as the counsel

guaranteed the defendant by the Sixth Amendment," *Strickland* 466 U.S. at 687, and because, even

if they were, Todd has failed to show prejudice, *see Knowles v. Mirzayance*, 556 U.S. 111, 122

(2009).

The Supreme Court has cautioned that the considerations underlying *Strickland* "make

strict adherence to the Strickland standard all the more essential when reviewing the choices an

attorney made at the plea bargain stage." *Premo v. Moore*, 562 U.S. 115, 125 (2011).

> Failure to respect the latitude *Strickland* requires can create at least two problems
> in the plea context.  First, the potential for the distortions and imbalance that can
> inhere in a hindsight perspective may become all too real.  The art of negotiation is
> at least as nuanced as the art of trial advocacy, and it presents questions further
> removed from immediate judicial supervision.   There are, moreover, special
> difficulties in evaluating the basis for counsel's judgment: An attorney often has
> insights borne of past dealings with the same prosecutor or court, and the record at
> the pretrial stage is never as full as it is after a trial.  In determining how searching
> and exacting their review must be, habeas courts must respect their limited role in
> determining whether there was manifest deficiency in light of information then
> available to counsel.  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).
>
> . . .
>
> Second, ineffective-assistance claims that lack necessary foundation may bring
> instability to the very process the inquiry seeks to protect.  *Strickland* allows a
> defendant "to escape rules of waiver and forfeiture."  *Harrington v. Richter*, 562
> U.S. 86, 105 (2011).  Prosecutors must have assurance that a plea will not be undone
> years later because of infidelity to . . . the teachings of *Strickland*.  The prospect
> that a plea deal will afterwards be unraveled when a court second-guesses counsel's
> decisions while failing to accord the latitude Strickland mandates . . . could lead
> prosecutors to forgo plea bargains that would benefit defendants, a result favorable
> to no one.

---

[2] These arguments are conclusory and difficult to follow.  If Todd is arguing that his trial counsel was
ineffective for not raising these issues pretrial, his argument fails because these are not the sorts of issues
that can be raised pretrial; they are issues to be weighed after the presentation of evidence.  If Todd is
arguing that there was not a factual basis for his plea, this argument is fail because the waiver clause in
Todd's plea agreement prevents him from "collaterally attack[ing] his conviction" on any grounds other
than ineffective assistance of counsel or prosecutorial misconduct.  [DE 245 at 823–24].

*Id.*

Todd presents the proposed defenses in a conclusory manner and without citing evidence in support, and so his trial counsel's advice to accept the plea deal cannot be shown deficient or prejudicial.  In Todd's own recitation of the facts in the Motion to Vacate, Todd recounts that "Todd's brother in law, Taylor was a tractor trailer professional, and Todd asked Taylor would he be willing to talk to some people that wanted Taylor's assistance and experience in the highway, to transport drugs for them."  [DE 298 at 1144].  Todd also admits that he and Taylor traveled to the designated meeting-spot to take possession of narcotics.  [*Id.* at 1146].  While Todd is correct that proof of an agreement between a defendant and a government agent or informer will not support a conspiracy conviction, *United States v. Pennell*, 737 F.2d 521, 536 (6th Cir. 1984) (collecting cases), Todd does not allege that Taylor was a government agent or informer, all but admitting that he conspired with another to possess narcotics with the intent to distribute them.[3] Even ignoring whatever evidence the Government may have had that Todd conspired with the other named defendants, Todd's own version of events suggests that pleading guilty to Count 1 was a prudent decision.

Todd also suggests that the evidence showing that he intended to possess narcotics was weak because the substance handed to Todd and Taylor was "a fake narcotic."  [DE 298 at 1144; DE 322 at 1320; DE 333 at 1349 ("sham drugs")].  But, as discussed above, Todd admits that he and Taylor traveled to the designated meeting-spot to take possession of narcotics, and "[t]he government's unannounced use of sham [narcotics] cannot possibly be 'a relevant reflection of [Todd's] underlying intent.'"  *Pennell*, 737 F.2d at 526 (quoting *United States v. McDowell*, 705

---

[3] The indictment does not limit the conspiracy to the named defendants, instead alleging that Todd conspired with the named defendants "and others."

F.2d 426, 428 (11th Cir. 1983)).  Again, Todd's own version of events suggests good reason to plead guilty to Count II.

Moreover, by accepting the plea deal, Todd lost the opportunity to present these defenses. In return, he received valuable consideration—the Government agreed to recommend "a sentence of imprisonment at the lowest end of the applicable Guideline Range," and to "recommend a reduction of 3 levels below the otherwise applicable Guideline for 'acceptance of responsibility.'" [DE 245 at 822–23].  Accepting the plea deal also foreclosed the "chance that prosecutors might convince [another] defendant to testify against [Todd] in exchange for a better deal" or that the Government might "uncover additional incriminating evidence."  *Premo*, 562 U.S. at 126.  The Court cannot say that Todd's trial counsel was ineffective for recommending that Todd accept that bargain and Todd's related objections are overruled.

Nor has Todd shown prejudice.  "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas," *United States v. Timmreck*, 441 U.S. 780, 784 (1979).  Todd has not asserted that he would have rejected the plea agreement had his trial counsel given him different advice about his chances at trial, much less offered contemporaneous evidence that he would have done so.[4]  Todd has therefore failed to show that he was prejudiced by any ineffective advice given by trial counsel regarding his plea agreement and his related objections are overruled.

     3.     *Pressuring Todd into accepting the Guilty Plea.*

---

[4] The only evidence presented by Todd is a change-of-plea hearing in which Todd declined to plead guilty and indicated his desire to go to trial.  [DE 219 at 647].  That Todd had at one point suggested a desire to go to trial is not probative of what he would have chosen to do had his counsel been more sanguine about Todd's chances at trial.

Todd next argues that his trial counsel was constitutionally ineffective because he "pressured Todd to enter into the plea agreement." [DE 298 at 1151; DE 322 at 1323]. Trial counsel allegedly pressured Todd into accepting the plea agreement by telling "Todd that he would need more money to go to trial," telling "Todd to give him his vehicle for extra payment," and failing to prepare for trial. [*Id.*].

Todd's argument again fails to show either ineffective assistance or prejudice. Todd cannot establish that his trial counsel forced him into accepting the plea agreement because his claim that he felt as though he had not choice but to plead guilty as a result of his trial counsel's deficient pretrial performance conflicts with his sworn testimony at the plea hearing. At that hearing, Todd said that he was "fully satisfied with the advice that" he had received from trial counsel, that he understood that if he "could not afford to hire [his] own attorney, the Court would appoint one to represent" him, that he had "the right to plead not guilty and to maintain that not guilty plea and [he was] absolutely under no obligation to plead guilty," that no one had "threatened [him] or anyone close to [him] or done anything in any way at all to force [him] to plead guilty," and that he "voluntarily agree[d] to [the plea agreement]." [DE 313 at 1263–65, 1269–70].

As stated by the Sixth Circuit when faced with a challenge to a guilty plea based on off-the-record allegations:

> If we were to rely on [the petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).  Todd's sworn statements at the plea hearing that he had not been forced to accept the plea bargain and that he was doing so of his own free-will belie his claim that he pleaded guilty as a result of his dissatisfaction with his trial counsel's performance.  Even if Todd had shown that his trial counsel was ineffective, he has failed to show prejudice because he has not "demonstrate[ed] a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee*, 137 S. Ct. at 1965.  Thus, the Court overrules the objection on this point.

### 4.    *Failure to Object to Drug Quantity at Sentencing.*

Todd argues that his trial counsel was ineffective for failing to object to the trial court's determination that the amount of heroin at issue was "between one and three kilograms," which resulted in a base offense level of 30.  [DE 282 at 1062; DE 298 at 1154; DE 322 at 1320 ].  Todd's primary arguments on this point track his earlier arguments: the heroin was "sham" heroin and he had not conspired to possess or distribute that heroin anyhow, as his co-conspirator was a government agent.  [DE 298 at 1155–56, 322 at 1320].  For the reasons previously stated, these arguments must fail.

Todd also presents two new arguments.  First, he asserts that when he and Taylor traveled to the meeting place to procure the heroin, they had different goals—Todd was going so that he could secure the heroin for Reed, while Taylor was merely coming along so that introductions could be made to facilitate future deals between Taylor and others.  [DE 298 at 1155; 322 at 1320; DE 333 at 1349].  Todd could not conspire with Reed because Reed was by that time a government agent, so the reasoning goes, and Todd was not conspiring with Taylor at all—they were merely on parallel heroin-related errands that day.  Thus, trial counsel should have pressed the trial court

13

to find that Todd had conspired to possess a lower quantity of heroin—presumably no heroin. But when Todd pleaded guilty, his end of the bargain required that he admit to having "engaged in a conspiracy to distribute at least 1 kilogram . . . of heroin" and to waive the right to challenge the veracity of that admission. [DE 245 at 820, 823–24]. Todd's trial counsel was therefore unable to argue at sentencing that Todd had not conspired to possess less than one kilogram of heroin, and he could not therefore be ineffective for failing to do so. In effect, Todd is attempting "to bootstrap a factual dispute into" an ineffective assistance of counsel claim, which his plea agreement forbids. *See Rembert v. Wilson*, No. 1:07–CV–1189, 2010 WL 3895083, at *8 (N.D. Ohio Sept. 30, 2010).

Second, Todd argues that his base offense level should have been reduced by three points under USSG § 2X1.1(b)(2), which provides for a three-level reduction to a defendant's base offense level for most incomplete conspiracies:

> If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

USSG § 2X1.1(b)(2). [DE 322 at 1321; DE 333 at 1353].

Todd's argument fails for the reasons articulated above—Todd admitted as part of his plea agreement that he "engaged in a conspiracy to distribute at least 1 kilogram . . . of heroin" and "negotiated for and later showed up to purchase a kilogram of heroin from and undercover officer." [DE 245 at 820–21]. The substantial offense for the conspiracy charged in Count 1 was possession of heroin with the intent to distribute said heroin. Todd admits he had the intent to distribute the heroin, but implies that he never actually possessed the heroin. [*See id.*; DE 298 at 1146 ("[Officers] ordered Todd to (touch the package) and Todd said No!")]. According to the

14

Presentence Investigation Report, however, "Todd took custody of the purported kilogram of heroin." [DE 271 at 1015]. Given the deference owed to trial counsel under *Strickland*, this Court cannot say he was ineffective for not arguing at sentencing that Todd never possessed the heroin. The Court overrules Todd's objections on these issues.

## B.   Prosecutorial Misconduct

Todd raises three ways in which the prosecutor purportedly engaged in misconduct, each of which tracks his earlier ineffective assistance of counsel claims: first, the prosecutor indicted Todd for conspiring despite the alleged co-conspirator being a government agent; second, the prosecutor charged Todd despite knowing that the investigating officers entrapped Todd; and third, the prosecutor agreed with the court's application of a sentencing enhancement for Todd's leadership role. [DE 298 at 1163–1171].

The R&R concluded that Todd was procedurally defaulted from raising this challenge, and Todd has not objected to that finding, which forfeits review by this Court.[5] *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Todd is again merely trying to bootstrap factual issues, which the plea agreement prevents him from raising, into prosecutorial misconduct issues. For the reasons explained above, these arguments fail.

## C.   Certificate of Appealability

If Todd wishes to appeal any aspect of this Court's decision, he must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(b); Fed. R. App. P. 22(b). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See* Rule 11 of the Rules Governing Section 2255 Proceedings. The Court may issue a certificate of appealability to a petitioner seeking to vacate his or her conviction only if the applicant has made

---

[5] Todd recognizes the R&R's conclusion that he failed to raise the arguments on direct appeal. [DE 333 at 1353].

a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  For claims rejected on the merits, this means that the petitioner must show that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Todd has not established that reasonable jurists would disagree whether his claims lack merit.

When, however, "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  *Id.*  In such a case, no appeal is warranted.  *Id.*  Todd's prosecutorial misconduct claims were denied on procedural grounds, but Todd has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*  Thus, a COA is not warranted as to any of the claims asserted in Todd's prosecutorial misconduct claims.

**D.    Motions to Amend**

Todd has filed two Motions to Amend.  [DE 330; DE 334].  While The Anti-Terrorism and Effective Death Penalty Act generally prevents the filing of a "second or successive" § 2255 motion, a motion to amend does not qualify as a second or successive motion if it is filed before the final adjudication of the original motion.  *See Clark v. United States*, 764 F.3d 653, 657–58

16

(6th Cir. 2014).  Todd's Motion to Vacate has not yet been adjudicated, and so the Court must address his Motions to Amend on the merits.

Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts says that when special collateral-attack rules do not include a special provision for a circumstance, the Rules of Civil and Criminal Procedure should guide the court.  *See* 28 U.S.C. § 2255 Rule 12.  Because the Rules Governing Section 2255 Proceedings for the United States District Courts do not deal with amendments to motions for collateral review, the Federal Rules of Civil Procedure govern a motion to amend a § 2255 motion.  *See Oleson v. United States*, 27 F. App'x. 566, 568 (6th Cir. 2001).

The mandate of Fed. R. Civ. P. 15(a) that a court freely grant leave to amend when justice so requires has been interpreted to allow supplementation and clarification of claims first raised in a timely § 2255 motion.  *See Anderson v. United States*, 39 F. App'x. 132, 135–136 (6th Cir. 2002). Section 2255 imposes a one-year limitation on the filing of any motion seeking to amend, vacate, or set aside a federal sentence, which begins to run upon the date when the defendant's sentence becomes final.  Thus, for a § 2255 movant to amend a pending motion beyond the one-year limitation, the requested amendment must "relate back" to the original motion in that it seeks only to clarify or supplement claims timely raised in the original pleading.  If a motion to amend seeks to raise entirely new claims for relief, it is subject to the one-year limitation for filing a motion attacking the sentence.  *Oleson*, 27 F. App'x. at 570-71.

Finally, although Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires," leave may be denied for undue delay, bad faith by the moving party, repeated failure to cure defects by previously allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Todd seeks to raise two new issues in his second Motion to Amend, arguing that the district court erred by imposing the leadership enhancement and sentencing, [DE 330 at 1343–44], and that his trial counsel was ineffective for failing to explain to him the elements of the charged crimes, [DE 334 at 1357].  Todd's Motions to Amend come well after the one-year limitation on filing a timely § 2255 motion, and he may therefore not amend his Motion to Vacate to include these arguments.  [*See* DE 280; DE 322, DE 334].

Even were the proposed amendments not time-barred, they would be futile.  Todd's plea agreement waived his right to collaterally attack his conviction, except as to ineffective assistance of counsel and prosecutorial misconduct, and Todd may not therefore argue that the trial court erred by applying the leadership enhancement at sentencing.  Todd also argues that he "was never informed by . . . his attorney . . . that the government had to prove that Todd as an individual ultimately distributed in connection with the conspiracy in the excess of 100 grams to even trigger the enhancement penalty of § 841(b)(1)(A).  [DE 334 at 1358].  But Todd was not charged with distributing heroin; he was charged with conspiracy to possess with the intent to distribute heroin, and he was arrested in possession of over 100 grams of heroin.  [*See* DE 1 at 1, DE 271 at 1015].

## CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** the following:

(1)     Todd's objections to the R&R, [DE 321; DE 322; DE 333], are **OVERRULED** and the Findings of Fact, Conclusions of Law and Recommendations of the United States Magistrate Judge, [DE 319], is **ADOPTED**.

(2)     The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, [DE 298], is **DISMSISED WITH PREJUDICE**.

(3)     A certificate of appealability is **DENIED**.

(4)     The Motion for Relation Back Amendment, [DE 330], is **DENIED**.

(5)     The Motion for Relation Back Amendment, [DE 334], is **DENIED**.

Cc:     Counsel of record